IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RICHARD J. SANDOWSKI,      )      CIVIL NO. 17-00469 SOM-WRP
                          )
        Plaintiff,         )      ORDER (1) DISMISSING
                          )      PLAINTIFF'S FIFTH CAUSE OF
    vs.                    )      ACTION; (2) GRANTING
                          )      DEFENDANT'S MOTION FOR
KEVIN K. MCALEENAN, ACTING )      SUMMARY JUDGMENT ON
SECRETARY OF HOMELAND      )      PLAINTIFF'S SECOND AND FOURTH
SECURITY, et al.,          )      CAUSES OF ACTION; AND (3)
                          )      DENYING DEFENDANT'S MOTION
        Defendants.        )      FOR SUMMARY JUDGMENT ON
                          )      PLAINTIFF'S THIRD CAUSE OF
                          )      ACTION
                          )
                          )
                          )
                          )
                          )
                          )
                          )
                          )
                          )
_____ )

   ORDER (1) DISMISSING PLAINTIFF'S FIFTH CAUSE OF ACTION; (2)
 GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S
 SECOND AND FOURTH CAUSES OF ACTION; AND (3) DENYING DEFENDANT'S
 MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S THIRD CAUSE OF ACTION

**I.      INTRODUCTION.**

        Plaintiff Richard J. Sandowski claims that, while

working for the Transportation Security Administration, he was

discriminated against based on his race and religion, then fired.

TSA says Sandowski was fired because he was repeatedly

insubordinate.  Sandowski sues Defendant Kevin K. McAleenan in

his official capacity as the Secretary of the Department of

Homeland Security,[1] which TSA falls under.  Sandowski asserts
that TSA violated Title VII and various state laws.

Four of the claims Sandowski asserted in his Amended
Complaint remain.  ECF Nos. 71, 88.  Those include a Title VII
claim of racial discrimination (Second Cause of Action), a Title
VII claim of retaliation (Third Cause of Action), a Title VII
claim of religious discrimination (Fourth Cause of Action), and a
claim of intentional or negligent infliction of emotional
distress (Fifth Cause of Action).

DHS now moves to dismiss, or in the alternative, for
summary judgment on Sandowski's remaining claims.  DHS argues
that the Fifth Cause of Action should be dismissed under Rule
12(b)(1) of the Federal Rules of Civil Procedure because it is
preempted by the Civil Service Reform Act of 1972, or,
alternatively, because it is barred by the doctrine of sovereign
immunity.  ECF No. 89-1, PageID # 486-89.  DHS also maintains
that it is entitled to summary judgment on Sandowski's remaining
claims because they are either procedurally barred or because
they lack evidentiary support.  ECF No. 89-1, PageID # 494-500.

This court agrees that it lacks subject matter
jurisdiction over Sandowski's Fifth Cause of Action because that

---

[1] McAleenan has announced that he will leave that position
in October 2019.  Although the Secretary is properly named as a
Defendant, this order, to avoid confusion given personnel
changes, refers to the agency as if it is a party.

claim is barred by the doctrine of sovereign immunity.  This
court therefore grants DHS's motion to dismiss Sandowski's Fifth
Cause of Action.[2]

DHS is also entitled to summary judgment on Sandowski's
Second and Fourth Causes of Action, alleging racial and religious
discrimination.  There is no evidence that TSA racially
discriminated against Sandowski, and Sandowski's religious
discrimination claim is procedurally barred because of
Sandowski's failure to comply with Title VII's claim-processing
requirements.[3]

However, genuine issues of material fact remain as to
Sandowski's claim that TSA violated Title VII by retaliating
against him for bringing a 2005 religious discrimination claim.
A jury could conclude that either Sandowksi's immediate
supervisor, Doug Rolefson, or Sandowski's manager, Stanley
Tadaki, caused him to be fired because of that prior complaint.

---

[2]  As a result, this court need not address the alternative
argument that the Fifth Cause of Action is preempted by the Civil
Service Reform Act of 1978.

[3]  DHS asserts that this claim should also be dismissed
under Rule 12(b)(1) because Title VII's claim-processing
requirements are jurisdictional.  ECF No. 490-91.  As discussed
below, the Supreme Court recently rejected that argument.  *Fort
Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1852 (2019).
Because DHS relies on matters outside the Amended Complaint, this
court considers these procedural arguments as part of the motion
for summary judgment.

This court therefore denies DHS's motion for summary judgment on Sandowski's Third Cause of Action.

## II.     BACKGROUND.

### A.    Sandowski's First Administrative Complaint.

In October 2004, Sandowski began working as a TSA security screener at the Lanai airport. ECF No. 62, PageID # 356; ECF No. 74, PageID # 418. At first, Sandowski had a typical work week, with Saturday and Sunday off. ECF No. 62, PageID # 357; ECF No. 74, PageID # 418. Sandowski had problems with his initial supervisor, however, and in April 2005 he was transferred to a different shift under a new supervisor. *See* ECF No. 90-19, PageID # 714. While working that shift, Sandowski had Tuesdays and Wednesdays off. ECF No. 62, PageID # 357; ECF No. 74, PageID # 419.

Soon after his schedule had changed, Sandowski asked to return to a schedule with Saturdays and Sundays off. *See* ECF No. 90-17, PageID # 692. His initial request apparently did not mention his religion, ECF No. 90-17, PageID # 692, but at some point he told his supervisors he needed Sunday mornings off so that he could attend church. ECF No. 62, PageID # 357; ECF No. 74, PageID # 419. TSA denied Sandowski's request and told him that he could use annual leave to attend religious services. ECF No. 62, PageID # 357; ECF No. 74, PageID # 419.

On August 31, 2005, Sandowski contacted an employment discrimination counselor within TSA's Office of Civil Rights and Liberties and asserted that TSA's refusal to change his schedule to allow him to attend Catholic mass on Sunday constituted religious discrimination. ECF No. 90-19, PageID # 711. According to Sandowski, after he made that complaint, one of his supervisors, Doug Rolefson, repeatedly told him that "TSA Lanai is not for everyone." ECF No. 90-5, PageID # 531. Rolefson also allegedly told him that he didn't understand why forcing TSA employees to use annual leave to attend church services was discriminatory. ECF No. 90-5, PageID # 533. In addition, during a personnel evaluation, Rolefson allegedly stated that he was "personally offended" by Sandowksi's complaint and that he found it "stressful." ECF No. 90-5, PageID # 533.

At the same time, Sandowski was verbally counseled for a series of minor infractions. *See* ECF No. 62, PageID # 358; ECF No. 74, PageID # 421. He also received a negative performance evaluation. *See* ECF No. 90-20, PageID # 719. As a result, Sandowski expanded his complaints to the internal counselor to include a claim that his supervisors had given him him a negative performance evaluation in retaliation for his initial religious discrimination complaint. ECF No. 90-20, PageID # 720.

The counselor attempted to resolve Sandowski's complaint informally.[4] ECF No. 90-19, PageID # 714. The counselor contacted Stanley Tadaki, the Assistant Federal Security Director responsible for Lanai Airport. ECF No. 90-19, PageID # 714. Tadaki reviewed Sandowski's claims and responded on behalf of TSA.[5] ECF No. 90-19, PageID # 714.

Ultimately, the informal resolution attempts failed. On December 16, 2005, Sandowski filed a formal complaint with TSA's Office of Civil Rights and Liberties. ECF No. 90-19, PageID # 715. An administrative judge concluded that Sandowski had failed to prove the allegations in his complaint. ECF No. 92-1, PageID # 793. On February 17, 2009, the Department of Homeland Security, finding no error in that determination,

---

[4] Many of the statements submitted by DHS, including the statement of the agency counselor, are not affidavits or declarations that satisfy the requirements of Rule 56(c). This court nevertheless considers those statements to the extent that the authors could "testify to all the relevant portions . . . from [their] personal knowledge." *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

[5] DHS contends that, under Local Rule 56.1, Sandowski has admitted several of the material facts set forth in DHS's concise statement by failing to respond. ECF No. 102, PageID # 899-900. Although Sandowski's response was indeed imprecise, he did offer a competing version of events. ECF No. 101. More importantly, some of the material facts DHS identifies are contradicted by its own exhibits. For instance, DHS asserts that Tadaki did not know that Sandowski had "contacted the [agency counselor] with complaints of discrimination" when he fired Sandowski, ECF No. 90, PageID # 505, but the agency counselor's report indicates that he did. ECF No. 90-19, PageID # 714. This court does not consider the identified facts admitted.

declared the decision to be final.  ECF No. 92-1, PageID # 793.
DHS mailed a copy of its order to Sandowski, along with an
enclosure explaining that Sandowski had "the right to appeal to
the Equal Employment Opportunity Commission (EEOC) or to file a
civil action in an appropriate United States District Court."
ECF No. 92-1, PageID # 795.  The enclosure also informed
Sandowski that if he elected to file a civil action, he had 90
days to file a complaint.  ECF No. 92-1, PageID # 796.  Sandowski
received the DHS order on March 7, 2009.  ECF No. 90-23, PageID #
744.  He did not pursue a civil action, and nothing in the record
indicates that he appealed to the EEOC.

### B.   Sandowski's Second Administrative Complaint.

The record does not reflect any incident involving
Sandowski in the six months after he filed his formal
administrative complaint.  Beginning in July 2006, however, a
series of escalating disputes between Sandowski and his
supervisors led to Sandowski's termination.  Those incidents are
described below.

#### 1.   Sandowski's Refusal to Correct Errors in his Time Sheet.

In July 2006, Sandowski's immediate supervisor, Doug
Rolefson, noticed a discrepancy between TSA's sign-in sheet for
July 14, 2006, which indicated that Sandowski had worked for
11.50 hours, and Sandowski's time and attendance sheet for that
day, which claimed that he was entitled to 0.25 hours of overtime

because he had worked for 11.75 hours.  ECF No. 90-10, PageID #
666-67.  Rolefson says that he reviewed the screeners' time
sheets regularly, and that such errors were not uncommon.  ECF
No. 90-7, PageID # 579.  In accordance with his usual practice,
he asked Sandowski to correct his time sheet.  Rolefson says that
Sandowski refused.  ECF No. 90-7, PageID # 579; ECF No. 90-17,
PageID # 693-94.  Rolefson therefore sent a memo to John Abbott,
the payroll officer responsible for Sandowski, and Tadaki,
Rolefson's immediate supervisor, explaining that Sandowski was
claiming overtime that he was not entitled to and that he had
refused to correct his time sheet.  *See* ECF No. 90-7, PageID #
581; ECF No. 90-10, PageID # 665.

      Abbott and Tadaki both reviewed Sandowski's time sheets
and concluded that Sandowski was not entitled to overtime.  *See*
ECF No. 90-8, PageID # 622, 636.  Tadaki therefore asked
Sandowski to correct his time sheet several times.  ECF No. 90-8,
PageID # 638.  On one of those occasions, Sandowski asked him how
to correct the time sheet; Tadaki says he explained the correct
procedure and documented the discussion in contemporaneous notes.
ECF No. 90-8, PageID # 638-39.  Nevertheless, Sandowski did not
correct his time sheet.  ECF No. 90-8, PageID # 629, 638; ECF No.
90-17, PageID # 693-94.  Sandowski claimed that he did not make
any changes because Rolefson had not directed him to do so and
because, even after he discussed the issue with Tadaki, he did

not know how to make the corrections.  ECF No. 90-5, PageID # 526.

Sandowski also submitted time sheets for July 23, 2006, and August 4, 2006, which Abbott concluded were incorrect.  ECF No. 90-8, PageID # 627-29.  Rolefson asked Sandowski to correct his time sheet for July 23, 2006, but Sandowski allegedly refused.  ECF No. 90-11, PageID # 671.  Sandowski says that he did not correct the time sheet because Rolefson's calculations were incorrect and because Rolefson had not directed him to correct it.  ECF No. 90-5, PageID # 527.

### 2.    Sandowski's Failure to Secure Sensitive Information.

On August 10, 2006, Sandowski was verbally counseled for having failed to secure sensitive information.  According to several different TSA employees, TSA agents were supposed to ensure that the drawers in the area they had worked in were locked before they finished a shift.  ECF No. 90-7, PageID # 586-87, 598; ECF No. 90-17, PageID # 694.  When Sandowski left his assigned station on August 10, however, he allegedly left a drawer containing sensitive material unlocked.  ECF No. 90-17, PageID # 694.  Another one of Sandowski's supervisors, Genoa Lopez, says she discovered the unlocked drawer when she performed a final check before leaving the premises.  ECF No. 90-7, PageID # 600.  Lopez reminded Sandowski and a second TSA officer who had been working at that station that they needed to ensure the

drawers were locked before leaving their stations.  ECF No. 90-7,
PageID # 601.  Lopez says that Sandowski blamed Lopez herself for
having left the drawer unsecured.  *See* ECF No. 90-13, PageID #
677.

On multiple occasions, Sandowski has said that it was
Lopez who unlocked the drawer in the first place.  *See* ECF No.
90-5, PageID # 527; ECF No. 90-7, PageID # 551-53; ECF No. 90-18,
PageID # 705.  At other times, Sandowski has stated that the
drawer *was* locked before he left.  ECF No. 90-5, PageID # 527;
ECF No. 90-18, PageID # 706.

### 3.  Sandowski Accuses his Supervisor of Assault.

On August 11, 2006, Sandowski allegedly arrived at the
TSA office two minutes late for a shift that was scheduled to
begin at 5:45 p.m.  ECF No. 90-14, PageID # 679; *see also* ECF No.
90-7, PageID # 556.  Sandowski signed in at 5:45 p.m.  ECF No.
90-14, PageID # 679.  Although Sandowski claimed that he had
arrived early and had been in the restroom, he admitted that he
did not tell his supervisors that.  ECF No. 90-7, PageID # 555-
58.  Lopez informed him that he needed to sign in at 5:47 p.m.,
when he actually arrived.  ECF No. 90-14, PageID # 679.
Sandowski left the office without responding, but returned a few
minutes later.  ECF No. 90-14, PageID # 679.

Sandowski and his supervisors provided dramatically
different accounts of what happened next.  According to

Sandowski, when he reentered the office, Rolefson and Lopez were "out of control" and were yelling at each other. ECF No. 90-5, PageID # 528. When Rolefson and Lopez noticed him, they allegedly began screaming at him because he had arrived late. ECF No. 90-5, PageID # 528-29. Sandowski also claimed that Lopez pushed him several times and prevented him from leaving the TSA office. ECF No. 90-5, PageID # 529.

Rolefson and Lopez, on the other hand, both testified that when Sandowski returned to the office, they calmly asked him to change his sign-in time to 5:47 p.m. Sandowski allegedly became agitated, accused Rolefson and Lopez of harassment and discrimination, and attempted to call various TSA officials to complain. ECF No. 90-7, PageID # 592, 605; ECF No. 90-14, PageID # 679-80; ECF No. 90-15, PageID # 683-84. Rolefson and Lopez both denied that Lopez assaulted Sandowski or prevented him from leaving the TSA office. ECF No. 90-7, PageID # 592-95, 602-06; ECF No. 90-14, PageID # 679-80; ECF No. 90-15, PageID # 683-84.

That evening, Sandowski called Rolefson and Lopez's superior, Tadaki, to report the incident. ECF No. 90-8, PageID # 640. Sandowski told Tadaki that Lopez had pushed him; he asked to stay home the next day. ECF No. 90-8, PageID # 640-41. According to Sandowski, Tadaki responded by telling him to stay home. ECF No. 90-5, PageID # 528. Sandowski maintains that, during their conversation, he was "led to believe" that he was

being placed on administrative leave.  ECF No. 90-5, PageID #
528.  Tadaki, on the other hand, testified before a hearing
officer that he directed Sandowski to go to work, but told
Sandowski he would call Rolefson to find out what had happened.
ECF No. 90-8, PageID # 641.

When Tadaki called Rolefson, he received "a completely
different version of what happened."  ECF No. 90-8, PageID # 641.
Rolefson told Tadaki he had not seen Lopez push Sandowski.  ECF
No. 90-8, PageID # 641.  Tadaki believed Rolefson.  ECF No. 90-8,
PageID # 643.  He felt that Rolefson was a "real straight
shooter" who would "tell [it] like it is."  ECF No. 90-8, PageID
# 643.

The next morning, at 9 a.m., Tadaki received another
call from Sandowski.  ECF No. 90-16, PageID # 687. Sandowski had
apparently told Rolefson that he had Tadaki's permission to stay
home from work, and Sandowksi repeated that conversation to
Tadaki.  ECF No. 90-16, PageID # 687.  Tadaki told Sandowski that
he had said no such thing.  ECF No. 90-16, PageID # 687.  Tadaki
then told Sandowski that while he could not authorize
administrative leave, "a vacation leave was appropriate."  ECF
No. 90-16, PageID # 687.

On August 15 and 16, 2006, Tadaki contacted six other
individuals who had been working at the Lanai airport when
Sandowski claimed that Lopez assaulted him.  ECF No. 90-16,

PageID # 688-89.  None of those individuals could corroborate
Sandowski's claims.  ECF No. 90-16, PageID # 689.  Five of those
six individuals were not in the vicinity of the TSA offices when
the incident allegedly occurred.  *See* ECF No. 90-16, PageID #
689.  The one possible exception, John Dela Cruz, told Tadaki
that he was "within hearing distance" of the TSA office but "did
not hear any altercation between the parties involved."  ECF No.
90-16, PageID # 689.

### 4.  Sandowski's Termination.

After he finished his investigation, Tadaki decided to
fire Sandowski.  ECF No. 90-8, PageID # 643.  Tadaki says that
Sandowski was "very disruptive" and had "a problem with [his]
attitude towards the supervisors."  ECF No. 90-8, PageID # 651-
52.  Tadaki also says he believed that Sandowski lacked
credibility because his version of events had repeatedly been
contradicted by other TSA employees.  ECF No. 90-8, PageID # 651-
52.

On several occasions, Tadaki has stated that when he
made the decision to terminate Sandowski, he did not know about
Sandowski's prior employment discrimination complaint.  For
instance, Tadaki filed a sworn statement in response to questions
submitted by an investigator from TSA's Office of Civil Rights
and Liberties.  One of those questions was "[a]re you aware of
him having prior EEO activity (the filing of a previous complaint

13

apart from the instant complaint)?"  ECF No. 90-17, PageID # 692.
Tadaki responded that he "did not know that [Sandowski] had prior
EEO activity."  ECF No. 90-17, PageID # 692.  Later, at a hearing
before an administrative judge, TSA's attorney asked Tadaki
whether he took Sandowski's "prior EEO activity" into account
when he fired him.  ECF No. 90-8, PageID # 653.  Tadaki responded
that he "didn't know about that."  ECF No. 90-8, PageID # 653.

On August 30, 2006, Tadaki sent Sandowski official
notice of his termination.  ECF No. 90-9, PageID # 659.  The
notice cited seven bases for Tadaki's decision, and the court
summarizes the allegations here:

> 1) Sandowski submitted an incorrect time sheet for July 14,
> 2006, and he disregarded an order to correct it.
>
> 2) Sandowski submitted an incorrect time sheet for July 23,
> 2006, and he disregarded an order to correct it.
>
> 3) On August 10, 2006, Sandowski failed to secure a drawer
> containing sensitive information, and when his supervisor
> reminded him to secure the area, he responded in an
> unprofessional manner.
>
> 4) On August 11, 2006, Sandowski reported for his 5:45 p.m.
> shift at 5:47 p.m. but signed in at 5:45 even though Lopez
> directed him to sign in at 5:47.  When Rolefson also
> directed him to sign in at 5:47, Sandowski became irate and
> started yelling at his supervisors.
>
> 5) Sandowski submitted an incorrect time sheet for August 4,
> 2006, and he disregarded an order to correct it.
>
> 6) On August 12, 2006, Sandowski told Rolefson that Tadaki
> had placed him on administrative leave when Tadaki
> actually told him to report for work.

7) On August 13, 2006, Sandowski submitted a report indicating that Lopez pushed him when he knew that was not true.

ECF No. 90-9, PageID # 659-60.

On January 12, 2007, Sandowski filed a second employment discrimination complaint with the internal office handling such matters.  ECF No. 90-25, PageID # 757.  His allegations focused on his time sheet for July 14, 2006, and his termination.  ECF No. 90-25, PageID # 757.  On January 11, 2016, an administrative judge concluded that Sandowski had failed to prove that he was discriminated against as he had alleged in his internal complaint.  ECF No. 90-27, PageID # 770.  On January 28, 2016, the DHS Office for Civil Rights and Civil Liberties issued a "final order" that implemented that decision.  ECF No. 90-27, PageID # 770.  On February 29, 2016, Sandowski appealed the DHS "final order" to the Equal Employment Opportunity Commission.[6] ECF No. 1, PageID # 10.  The EEOC affirmed the DHS order on July 7, 2017.  ECF No. 1, PageID # 22.  On September 19, 2017, Sandowski timely filed this action.  ECF No. 1.

### C.  **Prior Proceedings.**

This court previously dismissed certain claims but gave Sandowski leave to file an Amended Complaint.  ECF No. 54.

---

[6]  When a Title VII claim is brought by an employee of a federal executive agency and the agency issues a final order, the employee may seek review by the EEOC in a process outlined in 29 C.F.R. § 1614.403.

Sandowski filed his Amended Complaint on October 12, 2018.  ECF No. 62.  Thereafter, the parties stipulated to the dismissal of a number of claims.  *See* ECF Nos. 71 and 88.  Dismissed are an age discrimination claim (First Cause of Action), state statutory claims included in the Third and Fourth Causes of Action, and the first of two claims labeled the "Fifth Cause of Action," which asserted claims of negligent supervision, training, and retention.  That leaves in issue on the present motion a Title VII claim of racial discrimination (Second Cause of Action), a Title VII claim of retaliation (Third Cause of Action), a Title VII claim of religious discrimination (Fourth Cause of Action), and a claim of intentional or negligent infliction of emotional distress (the second "Fifth Cause of Action").

**III.     STANDARDS OF REVIEW.**

> **A.     Rule 12(b)(1) Standard.**

> Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint may be dismissed for lack of subject matter jurisdiction.  An attack on subject matter jurisdiction "may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  A factual attack, on the other hand, "disputes the truth of the allegations

that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

If the moving party makes a facial challenge, the court's inquiry is "confin[ed] . . . to allegations in the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Those allegations are taken by the court as true. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014). On the other hand, if the moving party makes a factual challenge, the court may consider evidence beyond the complaint and "need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage*, 343 F.3d at 1039 n.2) (internal quotation marks omitted).

### B. Summary Judgment Standard.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134

(9th Cir. 2000).  The movants must support their position
concerning whether a material fact is genuinely disputed by
either "citing to particular parts of materials in the record,
including depositions, documents, electronically stored
information, affidavits or declarations, stipulations (including
those made for the purposes of the motion only), admissions,
interrogatory answers, or other materials"; or "showing that the
materials cited do not establish the absence or presence of a
genuine dispute, or that an adverse party cannot produce
admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).
One of the principal purposes of summary judgment is to identify
and dispose of factually unsupported claims and defenses.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that
fails to demonstrate facts to establish what will be an essential
element at trial.  *See id.* at 323.  A moving party without the
ultimate burden of persuasion at trial--usually, but not always,
the defendant--has both the initial burden of production and the
ultimate burden of persuasion on a motion for summary judgment.
*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102
(9th Cir. 2000).

The burden initially falls on the moving party to
identify for the court those "portions of the materials on file
that it believes demonstrate the absence of any genuine issue of

material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 290 (1968)); *see also Addisu*, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").

In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.*

IV.      ANALYSIS.

     A.   **This Court Dismisses Sandowski's Fifth Cause of Action For Lack of Jurisdiction.**

In his Fifth Cause of Action, Sandowski alleges that, by discriminating against him, TSA intentionally or negligently caused him to suffer emotional distress.  ECF No. 62, PageID # 365.  The Fifth Cause of Action thus asserts a tort claim.

DHS argues that, even if this claim is not preempted by the Civil Service Reform Act of 1978, Sandowski has failed to comply with the exhaustion requirements in the Federal Tort Claims Act.  ECF No. 89-1, PageID # 488-89.  DHS therefore moves to dismiss this claim under Federal Rule of Civil Procedure 12(b)(1) on the ground that this court lacks subject matter jurisdiction.  Sandowski does not dispute DHS's assertion that the Fifth Cause of Action cannot survive as a separate claim.[7] ECF No. 100, PageID # 870.

If Sandowski has not complied with the jurisdictional requirements of the FTCA, his Fifth Cause of Action is barred by

---

     [7]  As Sandowski argues, *see* ECF No. 100, PageID # 870, if he prevails on his Title VII claims and shows that DHS "engaged in unlawful intentional discrimination," he may be entitled to damages for emotional distress.  42 U.S.C. § 1981a(a)(1), (b)(3); *see also Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1059 (9th Cir. 2009) ("the Civil Rights Act of 1991 made available compensatory damages for emotional pain and suffering . . . under Title VII").  In his complaint, however, Sandowski asserted a separate claim for "Intentional and/or negligent infliction of emotional distress."  ECF No. 62, PageID # 365.  As discussed below, the court does not have jurisdiction over that tort claim.

the doctrine of sovereign immunity.  Sandowski has sued the Secretary of the Department of Homeland Security in his official capacity.  *See generally Lewis v. Clarke*, 137 S. Ct. 1285, 1290 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office[.]").  The real party in interest on an FTCA claim is the United States, *see id.*, which is immune from suit unless it expressly waives its sovereign immunity.  *United States v. Testan*, 424 U.S. 392, 399 (1976).  In the absence of such a waiver, federal courts do not have jurisdiction over an action against the United States.  *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006); *see also Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992) (affirming a dismissal for lack of subject matter jurisdiction when a plaintiff filed suit without complying with the FTCA requirement that a federal agency have conclusively denied a claim or that six months have elapsed without final agency disposition of the claim).

The FTCA "waives the United States' sovereign immunity for actions in tort."[8]  *Cadwalder v. United States*, 45 F.3d 297,

---

[8]  Sandowski's FTCA claim should have named the United States rather than McAleenan.  *See Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) ("[T]he United States is the only proper party defendant in an FTCA action[.]").  This defect could be cured by amending the complaint to substitute the United States as a defendant, *see id.*, but such an amendment would be futile because Sandowski has failed to comply with the FTCA's exhaustion requirements.

300 (9th Cir. 1995).  To bring a claim under the FTCA, a plaintiff must "have first presented the claim to the appropriate Federal agency[.]"  *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000) (quoting 28 U.S.C. § 2675(a)).

Sandowski has not complied with that FTCA jurisdictional requirement.  Sherry Johnson, the TSA employee responsible for responding to FTCA claims filed against TSA, submitted a declaration stating that TSA had not received "any administrative claim filed by or on behalf of Richard J. Sandowski at any time from 2006 to the present."  ECF No. 90-4, PageID # 522.  Sandowski has not presented any evidence contradicting that declaration.[9]  It is therefore undisputed that Sandowski did not file an FTCA administrative claim after 2006, the year that events that might have caused emotional distress occurred.  *See* ECF No. 62, PageID # 365.  Moreover, Sandowski has never argued that he filed an FTCA administrative claim *before* 2006.  This court therefore concludes that undisputed evidence shows that Sandowski has never filed an FTCA claim with TSA.[10]

_____

[9]  The Ninth Circuit has held that the filing of an administrative claim must be "affirmatively alleged in the complaint."  *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980).  The Amended Complaint contains no such allegations.

[10]  Although it is not clear from Sandowski's complaint when his emotional distress claims accrued, the court notes that by the time this lawsuit was filed in 2017, it was almost certainly too late for Sandowski to file an administrative claim.  The relevant statute of limitations states that an FTCA claim must be "presented in writing to the appropriate Federal agency within

Because Sandowski does not meet the FTCA's jurisdictional requirement, the doctrine of sovereign immunity deprives this court of jurisdiction over Sandowski's Fifth Cause of Action. *Brady*, 211 F.3d at 502-03. Accordingly, this court grants the motion to dismiss that claim under Rule 12(b)(1).

**B. DHS is Entitled to Summary Judgment on Sandowski's Second Cause of Action.**

In his Second Cause of Action, Sandowski contends that TSA fired him because of his race. *See* ECF No. 100, PageID # 883. That claim is not supported by any evidence in the record.

Usually, claims of racial discrimination are subject to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff, however, can "establish a prima facie case of disparate treatment without satisfying the *McDonnell Douglas* test, if she provides evidence suggesting that the employment decision was based on a discriminatory criterion[.]" *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (quotation marks omitted). That evidence can include comments that betray racial animus. *Id.* at 1148-49. Sandowski contends that such comments were made here. ECF No. 100, PageID # 833.

Derogatory comments, however, are only evidence of discrimination if they were made *by the decisionmaker*, or at

_____

two years after such claim accrues." 28 U.S.C. § 2401(b).

least relate to the decision*. See Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) ("The only evidence Vasquez offers are the remarks of Berglund.  However, Berglund was not the decisionmaker, and Vasquez has offered no evidence of discriminatory remarks made by Leeds."); *DeHorney v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 879 F.2d 459, 468 (9th Cir. 1989) (affirming grant of summary judgment because the plaintiff "failed to establish a nexus between the alleged racial slur and the decision to terminate").  "When a discriminatory statement is made by a [nondecisionmaker], a plaintiff 'must show a nexus between the discriminatory remarks and the subsequent employment decisions' that adversely affected him*." Ajwani v. Hanmi Bank*, 2016 WL 3901773, at *4 (C.D. Cal. July 18, 2016) (quoting *Vazquez*, 349 F.3d at 640) (brackets omitted)*; see also Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1281 (9th Cir. 2017) (comments of nondecisionmaker can demonstrate discriminatory animus if that individual influenced the decision to fire the plaintiff).

Here, the comments that allegedly betray racial animus were made by Sandowski's former supervisor, Marc Miyakawa, who allegedly told Sandowski that he did not like working with him because Sandowski was Caucasian.  *See* ECF No. 90-5, PageID # 531. There is no evidence that suggests that Miyakawa played a role in Sandowski's termination.  Nor is there evidence that Tadaki knew

about this.  At most, the record shows that after a meeting at
which Miyakawa allegedly made one of the comments, Sandowski
asked Tadaki for a copy of a specific form referred to during the
meeting.  Nothing suggests that Sandowski and Tadaki discussed
Miyakawa's alleged comments about Sandowski's race.  Therefore,
even if Miyakawa made the alleged comments, nothing indicates
that Sandowski was terminated because of racial animus.  *Ajwani*,
2016 WL 3901773, at *4.  This court grants the motion for summary
judgment on Sandowski's Second Cause of Action.

> **C.    Questions of Fact Exist Regarding Sandowski's
>        Third Cause of Action.**

In his Third Cause of Action, Sandowski claims that,
after he pursued his first complaint with TSA's Office of Civil
Rights and Liberties, his superiors retaliated by firing him.
Two different theories of retaliation are available to Sandowski.
This court first examines whether the record suggests that Tadaki
decided to fire Sandowski because of his protected activity
relating to alleged religious discrimination.  This court next
examines whether Rolefson, Sandowski's immediate supervisor,
caused Tadaki to fire him because of that protected activity.
With respect to both theories, genuine issues of material fact
preclude summary judgment.

### 1. A Genuine Issue of Material Fact Exists as to whether Tadaki Retaliated Against Sandowski by Firing Him.

Sandowski's first theory is that Tadaki retaliated against him by firing him. The *McDonnell Douglas* system of shifting burdens applies to that theory. *Bergene v. Salt River Project Agr. Imp. & Power Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001). Under *McDonnell Douglas*, "the plaintiff bears the initial burden to establish a prima facie case of [retaliation]." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007); *see also Bergene*, 272 F.3d at 1140-41. "If the plaintiff succeeds in showing a prima facie case, the burden then shifts to the defendant to articulate a 'legitimate, nondiscriminatory reason' for its employment decision." *Noyes*, 488 F.3d at 1168; *see also Bergene*, 272 F.3d at 1141. "Should the defendant carry its burden, the burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered reason was a pretext for [retaliation]." *Noyes*, 488 F.3d at 1168; *see also Bergene*, 272 F.3d at 1141.

To establish a prima facie case, a plaintiff must demonstrate (1) "that he or she was engaged in protected activity," (2) "that he or she suffered an adverse action," and (3) "that there was a causal link between the two." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (quotation marks omitted). To establish the requisite

causal link, a plaintiff must show that "his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *T.B.*, 806 F.3d at 473.  Ultimately, on summary judgment, "[t]he requisite degree of proof necessary to establish a prima facie case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

It is undisputed that Sandowski satisfies the first two elements of his prima facie case.  DHS, however, contends that Sandowski cannot establish a causal link between having engaged in protected activity and having suffered an adverse action. ECF No. 89-1, PageID # 496-98.  It was Tadaki who made the decision to fire Sandowski, and, to establish causation, Sandowski must show that his protected activity caused that decision.  *See generally Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (plaintiff must establish that the decisionmaker subjectively intended to retaliate).

DHS contends that Sandowski cannot make that showing for two reasons.  First, Sandowski's protected activity allegedly could not have caused Tadaki to fire him because Tadaki did not even know about it.  ECF No. 89-1, PageID # 497-98.  In support of that assertion, DHS cites Tadaki's assertions that he was

unaware of Sandowski's prior protected activity.  ECF No. 89-1, PageID # 497-98.

That argument fails to account for the agency counselor's report on his informal attempt to resolve Sandowski's grievances about alleged religious discrimination.  According to the report, Tadaki himself responded to those grievances.  ECF No. 90-19, PageID # 714.  To respond, Tadaki had to have known that Sandowski had contacted an agency counselor with a discrimination concern.  That contact, standing alone, was protected activity.  *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997).

Second, DHS maintains that even if Tadaki knew about Sandowski's protected activity, Sandowski does not demonstrate that Tadaki fired him because of it.  ECF No. 89-1, PageID # 496-97.  In retaliation cases, the timing of an employee's termination frequently contributes to an inference of causation.  Here, a reasonable juror could infer that Tadaki learned about Sandowski's protected activity in late 2005, when he was contacted by the agency counselor.  ECF No. 90-19, PageID # 713-15.  Sandowski was fired in August 2006, approximately 10 months later.

This court has recognized that "[a] temporal distance of several months makes a causal link more difficult to prove[.]" *Jinadasa v. Brigham Young Univ. Hawaii*, 2016 WL 6645767, at *14

(D. Haw. Nov. 9, 2016) (quotation marks omitted). Nevertheless, "there is no 'bright line' rule providing that any particular period is always too long or always short enough to support an inference" of causation." *Id.* (citing *Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003)). Indeed, the Ninth Circuit has held that similar time periods can provide some support for an inference of causation. *See Coszalter*, 320 F.3d at 977 ("Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation."); *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002) ("an eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory").

　　While the lapse in time does not preclude an inference of causation, Sandowski must adduce "additional evidence" to prevail. *Coszalter*, 320 F.3d at 977; *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) ("timing plus other evidence may be an appropriate test where the temporal proximity is not so close as to be 'unduly suggestive'"). Additional evidence may be in the form of a showing that "his employer's proffered explanations for the adverse employment action were false and pre-textual." *Coszalter*, 320 F.3d at 977; *see also Farrell*, 206 F.3d at 281 (noting that causation may be shown if "the employer gave

inconsistent reasons for terminating the employee"). As the Supreme Court has explained, "[p]roof that the defendant's explanation is unworthy of credence" can constitute "quite persuasive" evidence of unlawful conduct. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000). Under those circumstances, a juror could infer that "the employer is dissembling to cover up a discriminatory purpose." *Id.*

Although the court is certainly not finding here that Tadaki lied about why he fired Sandowski, a reasonable juror faced with the evidence now before this court might conclude that Tadaki did indeed lie. Tadaki says that one of the reasons he fired Sandowski was that Sandowski had disobeyed an order by missing work on August 12, 2006. ECF No. 90-8, PageID # 641; ECF No. 90-9, PageID # 660. According to Sandowski, however, Tadaki did in fact tell him to stay home. ECF No. 90-5, PageID # 528. A genuine dispute exists as to whether Tadaki honestly believed that Sandowski had disobeyed his order.

There is also a genuine dispute over whether Tadaki lied about his knowledge of Sandowski's protected activity. In the hearing before the administrative judge, Tadaki was asked if he had taken Sandowski's "prior EEO activity" into account when he decided to terminate him. ECF No. 90-8, PageID # 653. Tadaki responded that he "didn't know about that." ECF No. 90-8, PageID # 653. The reference to Sandowski's "prior EEO activity" might

have encompassed Sandowski's meetings with the agency counselor.
If that is so, Tadaki plainly did know about those meetings.  ECF
No. 90-19, PageID # 714.

DHS argues that Tadaki "qualified his answer" because,
in response to a question about whether he knew that Sandowski
had filed a formal complaint, Tadaki acknowledged that Sandowski
had said that he was "going to file a complaint with the EEO,
OCR, the ombudsman, and so forth."  ECF No. 90-8, PageID # 653-
54.  That appears to be a reference to Sandowski's assertions
that he wanted to file a formal complaint concerning Lopez's
alleged physical assault with TSA's Office of Civil Rights and
Liberties or the TSA's Ombudsman.  *See* ECF No. 90-15, PageID #
683, ECF No. 90-16, PageID # 687-88.  Interpreted in that light,
Tadaki's subsequent response does not demonstrate that he was
candid about his knowledge of Sandowski's meetings with the
agency counselor.

DHS also maintains that Tadaki would have interpreted
the question about Sandowski's "prior EEO activity" narrowly
because of how that term was defined in a series of written
questions submitted by a TSA investigator.  ECF No. 111, PageID #
957.  In those questions, the investigator asked whether Tadaki
was "aware of him having prior EEO activity (the filing of a
previous complaint apart from the instant complaint)." ECF No.
90-17, PageID # 692.  The question asked by the government

attorney at the subsequent hearing, however, was not similarly limited. That question could be construed as asking whether Tadaki knew about *any* prior protected activity.[11] ECF No. 90-8, PageID # 653.

Thus, as DHS itself concedes, it is not clear what Tadaki meant when he testified that he did not know about Sandowski's prior protected activity. ECF No. 111, PageID # 957. Resolving that ambiguity is the role of the jury. Tadaki may say at trial that his reference to not knowing "about that" only referred to not knowing about Sandowski's formal agency complaint, but the present record would permit a juror to find that Tadaki meant more than that. If Tadaki did lie, that might have been an attempt to conceal a connection between Sandowski's prior protected activity and his termination.[12] *See Reeves*, 530 U.S. at 147 ("[T]he factfinder is entitled to consider a party's

---

[11] Indeed, in its reply brief, DHS argues that Sandowski's contact with the agency's counselor *was* the pertinent protected activity. ECF No. 102, PageID # 905 ("[I]t is undisputed that the predicate EEO protected activity occurred on August 31, 2005 when Plaintiff made initial contact with the EEO Counselor[.]").

[12] A plaintiff cannot rely *solely* on evidence that the employer is "dissembling" to prevail on a Title VII claim. Instead, he must point to some evidence connecting the deceptive conduct to the alleged discrimination. *Cf. Reeves*, 530 U.S. at 148 (holding that, in a racial discrimination case, evidence of deception, when *combined with* other evidence, may establish discrimination). Here, both the timing of Sandowski's termination and some evidence supporting an inference that Tadaki was not entirely honest about his knowledge of Sandowski's protected activity could permit a juror to draw the requisite connection.

dishonesty about a material fact as affirmative evidence of guilt." (quotation marks omitted)).

In sum, a genuine dispute exists over whether some of the reasons Tadaki gave for terminating Sandowski were false. Such possible inaccuracies, when combined with the temporal proximity between Sandowski's protected activity and his termination, permit an inference that Tadaki terminated Sandowski because of that activity. *See Coszalter*, 320 F.3d at 977-79. Sandowski has made the minimal showing required to establish a prima facie case.

Under *McDonnell Douglas*, the burden shifts to Tadaki to articulate a legitimate, nondiscriminatory reason for Sandowski's termination. *See Bergene*, 272 F.3d at 1141. Tadaki has stated that he fired Sandowski because he was insubordinate and clashed with his supervisors. ECF No. 90-8, PageID # 651-52; ECF No. 90-9, PageID # 659-60. Accepting for the purposes of this discussion that that qualifies as a legitimate, nondiscriminatory reason, this court looks to Sandowski to demonstrate that Tadaki's articulated reasons are mere pretext. *See Bergene*, 272 F.3d at 1141.

The Ninth Circuit has held that circumstantial evidence of pretext must be "specific" and "substantial." *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015). This standard, however, "is tempered by our observation that a plaintiff's

burden to raise a triable issue of pretext is hardly an onerous one." *Id.* (quotation marks omitted). Here, the evidence establishing pretext is both specific and substantial.

Tadaki's formal notice of termination informed Sandowski that he was being terminated for seven different infractions. ECF No. 90-9, PageID # 659-60. To establish pretext, Sandowksi must show that Tadaki did not "honestly believ[e]" that he fired Sandowski for those seven reasons. *Villiarimo*, 281 F.3d at 1063. Sandowski can do so "by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable[.]" *Mayes*, 846 F.3d at 1280.

Sandowski has called into question at least one of those seven reasons. As discussed above, a genuine dispute exists concerning whether Tadaki honestly believed that he told Sandowski to attend work on August 12, 2006. Moreover, the agency counselor's report also calls Tadaki's credibility into question because it creates a dispute over whether Tadaki lied when he claimed that he was unaware of Sandowski's prior protected activity.

Sandowski does not offer evidence that directly challenges the other six reasons Tadaki gave for terminating him. The Ninth Circuit, however, has held that once the evidence demonstrates that one of an employer's proffered reasons is

pretextual, "[a] reasonable fact finder could also find that [such] a pretextual explanation . . . casts doubt on other explanations that, standing alone, might appear to be true." *Coszalter*, 320 F.3d at 978. A reasonable juror could reach the same conclusion here.[13]

DHS nevertheless contends that this case is analogous to *Villarimo*, in which the Ninth Circuit affirmed a grant of summary judgment because the plaintiff failed to establish pretext. In *Villarimo*, the plaintiff, a ramp supervisor at an airport, was present when an airplane sustained damage. 281 F.3d at 1058. During the subsequent investigation, the plaintiff took responsibility for the damage, apparently to protect a subordinate, but three other witnesses contradicted her version of events. *Id.* Her employer terminated her for lying. *Id.* at 1059. While the plaintiff contended that she was terminated because of her gender, the Ninth Circuit held that she could not establish pretext because no evidence showed that the company's security director, who conducted the investigation, did not

---

[13] DHS contends that *Coszalter* is distinguishable because the evidence establishing pretext in that case included evidence that an arbitrator ruled that the defendant inconsistently applied one of the policies it relied on. ECF No. 111, PageID # 962; *see also Coszalter*, 320 F.3d at 978. The Ninth Circuit's decision, however, did not depend on the nature or the quality of the evidence at issue. The court simply held that, as in this case, the evidence would permit a finder of fact to determine that one of the stated rationales for the plaintiff's termination was pretext.

"honestly believe" the three other witnesses.  *Id.* at 1059, 1063.
In short, there was no evidence that any decisionmaker was
untruthful.

Here, Sandowski has pointed to evidence that could call
into question Tadaki's credibility, and it was Tadaki who decided
to fire him.  A reasonable juror who concluded that Tadaki lacked
credibility could deem the reasons he gave for Sandowski's
termination to be mere pretext.  *See id.*  This court concludes
that material questions remain as to whether Tadaki fired
Sandowski in retaliation for his prior protected activity.

> **2.    A Genuine Issue of Material Fact Exists as to**
> **whether Rolefson Retaliated Against Sandowski**
> **by Causing Tadaki to Fire Him.**

Sandowski could also conceivably succeed on his
retaliation claim by demonstrating that Rolefson retaliated
against him by submitting false reports, and that those reports
caused Tadaki to fire him.  Although Sandowski does not refer to
such a theory by name, the theory is often referred to as a
"cat's paw" theory of liability.[14]  *Acosta v. Brain*, 910 F.3d
502, 514-15 (9th Cir. 2018).  To reiterate, to establish a prima
facie case of retaliation, Sandowski must show (1) that he was
engaged in protected activity, (2) that he suffered an adverse

---

[14] The doctrine "derives its name from a fable, made famous
by La Fontaine, in which a monkey convinces an unwitting cat to
pull chestnuts from a hot fire."  *EEOC v. BCI Coca-Cola Bottling
Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006).

action, and (3) that there was a causal link between the two.
*See T.B.*, 806 F.3d at 473.  A plaintiff can use a cat's paw
theory to establish the third element.  *Zamora v. City of
Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (the "cat's paw
analysis bear[s] on the third element, causation").  By showing
that a supervisor retaliated against the plaintiff by causing
management to fire him, the plaintiff can demonstrate that his
termination was caused by protected activity.

The parties agree that Sandowski establishes the first
two elements of his retaliation claim, leaving only causation in
dispute.  Under a cat's paw theory,[15] Sandowski must show that
(1) "a supervisor perform[ed] an act motivated by [retaliatory]
animus," (2) that act was "intended by the supervisor to cause an
adverse employment action," and (3) that act caused the adverse
employment action.  *Staub v. Proctor Hosp.*, 562 U.S. 411, 422
(2011); *see also Acosta*, 910 F.3d at 515 (noting that *Staub*
endorsed the cat's paw theory of liability).

In analyzing the first element, courts frequently rely
on the same type of evidence that would demonstrate causation in
a direct retaliation claim.  Circumstantial evidence that a

---

[15] If Sandowski can show that Rolefson retaliated by causing
Tadaki to fire him, he does not have to separately demonstrate
that TSA's rationale for firing him was pretextual.  By showing
that a biased supervisor caused management to fire an employee, a
plaintiff also establishes pretext.  *See France*, 795 F.3d at
1176-77 (holding that a plaintiff can establish pretext through a
cat's paw theory).

supervisor harbored retaliatory animus (such as antagonistic comments), when combined with evidence that the supervisor lied to his superiors, is usually sufficient to demonstrate that the supervisor intended to retaliate.  *See, e.g.*, *Morris v. McCarthy*, 825 F.3d 658, 669-72 (D.C. Cir. 2016) (stating that this element was shown by a supervisor's discriminatory comments and false report); *McLean v. Delhaize Am. Distribution, LLC*, 2019 WL 4046546, at *6 (D. Me. Aug. 27, 2019) (stating that retaliatory intent was shown by a supervisor's lie to superiors shortly after the plaintiff engaged in protected activity).

The record at least arguably includes both kinds of evidence.  After Sandowski complained to the agency counselor, Rolefson allegedly told him that "TSA Lanai is not for everyone," that he was "personally offended" by Sandowski's complaint, and that he found it "stressful."  ECF No. 90-5, PageID # 531-33.  At the same time, Sandowski received a negative performance review and was repeatedly counseled for minor infractions.  *See* ECF No. 62, PageID # 358; ECF No. 74, PageID # 421; ECF No. 90-20, PageID # 719.  That series of events could conceivably indicate retaliatory intent.[16]  *See Porter v. California Dep't of Corr.*,

---

[16] DHS maintains that these events do not support an inference of retaliatory intent because they occurred several months before Sandowski's termination.  ECF No. 111, PageID # 960.  The Ninth Circuit, however, has recognized that "[f]or a variety of reasons, some retaliators prefer to take their time: They may wait until the victim is especially vulnerable or until an especially hurtful action becomes possible.  Or they may wait

419 F.3d 885, 895 (9th Cir. 2005) ("circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to [an] inference" of retaliatory intent (quotation marks omitted)).

Sandowski's statements also present a genuine factual issue regarding whether Rolefson lied to Tadaki. On multiple occasions, Rolefson told Tadaki that Lopez had not pushed Sandowski during the altercation of August 11, 2006. ECF No. 90-8, PageID # 641-42; ECF No. 90-15, PageID # 683-84. Sandowski, on the other hand, insists that Lopez pushed him in front of Rolefson. ECF No. 90-5, PageID # 529. This dispute turns on credibility, which is an issue for trial. A reasonable juror who believed Sandowski's account and considered Rolefson's conduct after he learned about Sandowski's protected activity might conclude that Rolefson retaliated against Sandowski by attempting to get him in trouble with his superiors. *See Morris*, 825 F.3d at 669-72; *McLean*, 2019 WL 4046546, at *6.

Given the credibility issue related to whether Rolefson lied to Tadaki, the second element of Sandowski's cat's paw claim (that Rolefson intended to cause an adverse employment action) also involves a disputed factual issue. Evidence demonstrating

---

until they think the lapse of time disguises their true motivation." *Coszalter*, 320 F.3d at 978. A reasonable juror could infer that Rolefson waited until he could credibly accuse Sandowski of misconduct to retaliate.

that Rolefson falsely accused Sandowski of misconduct also demonstrates an intent to cause Sandowski's termination. *Duncan v. Johnson*, 213 F. Supp. 3d 161, 193 (D.D.C. 2016) ("[B]ecause a reasonable juror could infer that Andrews sent the memorandum to ELR with the knowledge that some adverse action could follow, the Court finds that plaintiff can just meet his burden under the second prong of the *Staub* test."); *McCaulley v. Harvard Drug Grp., LLC*, 2015 WL 13729901, at *10 (N.D. Ala. Aug. 20, 2015) ("Next, plaintiff must show that Christy Davis intended to cause her termination. The false report Davis submitted to Jonathan Evans regarding plaintiff's purported refusal to re-dip pharmaceuticals demonstrates such an intent.").

DHS contends that the false report does not show that Rolefson intended to cause an adverse employment action because Rolefson only gave his account of what happened after Sandowski accused Lopez of assault. ECF No. 111, PageID # 960. Irrespective of who initiated the investigation, however, a juror who believed Sandowski could conclude that Rolefson's statement to Tadaki was false. After considering Rolefson's prior statements expressing frustration with Sandowski's complaint of religious discrimination, a juror could also conclude that Rolefson made that false statement because he was upset about Sandowski's religious discrimination complaint and saw an opportunity to retaliate by causing Tadaki to fire Sandowski.

Finally, there is also a genuine issue of material fact as to the third element (causation) of Sandowski's cat's paw claim. Sandowski must show that Rolefson's "influence with [Tadaki was] strong enough to actually have caused the adverse employment action." *See Acosta*, 910 F.3d at 515 (quoting *Zamora*, 798 F.3d at 331) (brackets omitted). In *Zamora*, the Fifth Circuit held that a jury could conclude that the plaintiff's biased supervisors caused his suspension because the lieutenant who recommended suspending the plaintiff "relied heavily on the . . . supervisors' retaliatory statements[.]" 798 F.3d at 334.

Similar evidence exists here. When Sandowski and Rolefson presented Tadaki with different accounts of what had happened on August 11, 2006, Tadaki found Rolefson more credible. He explained that Rolefson was "a real straight shooter" who would "tell [it] like it is." ECF No. 90-8, PageID # 643. About a week later, after investigating the August 11 incident, Tadaki decided to fire Sandowski because he was insubordinate and not credible. ECF No. 90-8, PageID # 649-50. A reasonable juror could conclude that Tadaki relied heavily on Rolefson's account of events, and that Rolefson's influence caused Tadaki to fire Sandowski. *See Zamora*, 798 F.3d at 334.

DHS relies on the Ninth Circuit's decision in *Poland v. Chertoff*, which held that "if an adverse employment action is the consequence of an entirely independent investigation by an

employer, the animus of the retaliating employee is not imputed to the employer." 494 F.3d 1174, 1183 (9th Cir. 2007). The Supreme Court, however, subsequently held that a "biased report may remain a causal factor if the independent investigation takes it into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified." *Staub*, 562 U.S. at 421. *Poland*'s holding may not have survived *Staub*. *See Zamora*, 798 F.3d at 334-35 & n.5 (rejecting a similar argument based on *Staub*). Here, the record would allow a reasonable juror to conclude that Tadaki would not have fired Sandowski without Rolefson's report, making that report a but-for cause of Sandowski's termination.

In any event, a juror could also find that Tadaki's investigation shed no additional light on the discrepancy between Rolefson and Sandowski's accounts. DHS argues that the investigation corroborated Rolefson's version of events because Lopez herself submitted a similar statement. ECF No. 111, PageID # 961. Lopez unsurprisingly denied having pushed Sandowski. Tadaki appears to have contacted Rolefson precisely because he believed that Rolefson would provide an honest account of what had happened. *See* ECF No. 90-8, PageID # 643. Lopez's denial of Sandowski's accusations does not diminish the importance of Rolefson's report.

The other witnesses interviewed during the investigation here essentially stated that they had not seen Sandowski's altercation with Lopez and Rolefson. ECF No. 90-16, PageID # 689. DHS relies heavily on the account of John Dela Cruz, who stated that he was in an adjacent room and did not hear the incident. ECF No. 111, PageID # 961. That testimony did not support *any* account of the dispute between Lopez and Sandowski. Lopez and Sandowski both stated that shouting occurred, and Rolefson similarly indicated that Sandowski was upset. ECF No. 90-5, PageID # 528-29; ECF No. 90-14, PageID # 680; ECF No. 90-15, PageID # 683. Indeed, in Sandowski's formal notice of termination, Tadaki himself asserted that Sandowski shouted at Lopez and Rolefson. ECF No. 90-9, PageID # 660. Dela Cruz's assertion that he did not hear anything would not have helped Tadaki identify which of the competing versions of events was true. Although other minor details (such as Sandowski's proximity to Lopez as they worked after the alleged encounter) may have provided some support for Rolefson's version of events, a reasonable juror could conclude that, irrespective of the investigation, Tadaki's decision to fire Sandowski came down to his belief that Rolefson was more credible than Sandowski.[17]

---

[17] DHS also argues that Tadaki could have determined that Sandowski was not credible because of his history of submitting incorrect time sheets. ECF No. 111, PageID # 961. That may be so, but the record is not definitive on this point. The issue is whether Tadaki conducted an independent investigation into *the*

In sum, a reasonable juror could conclude that
Sandowski has satisfied every element of his cat's paw claim.  As
a result, genuine issues of material fact exist under both of
Sandowski's theories of retaliation.  This court denies the
motion for summary judgment on Sandowski's Third Cause of Action.

### D.    **Sandowski's Fourth Cause of Action is Untimely**.

In his Fourth Cause of Action, Sandowski claims that
TSA discriminated against him because he is Catholic.  That claim
is time-barred.

Federal employees must satisfy two requirements before
filing a Title VII claim in district court.  First, plaintiffs
must file an administrative complaint with their agency.  *See
Huerta v. Nielsen*, 2019 WL 1359794, at *3 (S.D. Cal. Mar. 25,
2019) ("Under Title VII, the filing of an administrative
complaint . . . is a prerequisite to filing a civil action in
federal district court."); *see also* 42 U.S.C. § 2000e-16(c).
Second, if an employee is "aggrieved by" his agency's
"disposition of his complaint," he must either appeal to the EEOC
or file a complaint in federal district court within 90 days of
his receipt of the agency's decision.  42 U.S.C. § 2000e-16(c).
Although some decisions have characterized these rules as

---

*incident between Lopez and Sandowski.*  Any reliance on the
history with time sheets arguably shows that Rolefson had some
influence with Tadaki, making Tadaki more likely to believe
Rolefson's report.

jurisdictional, *see Huerta*, 2019 WL 1359794, at *3 (citing cases), the Supreme Court recently held that they are "not of jurisdictional cast." *Fort Bend County*, 139 S. Ct. at 1850 (interpreting parallel provision).

Nothing in the record suggests that Sandowski appealed the final order by DHS in 2009 regarding his religious discrimination complaint to the EEOC. This court therefore examines whether the present claim was timely filed in this court.

If a plaintiff files a complaint in district court, the "scope of the plaintiff's court action depends on the scope of the [administrative] charge and investigation. The specific claims made in district court ordinarily must be presented to the [administrative agency].'" *Huerta,* 2019 WL 1359794, at *3 (S.D. Cal. Mar. 25, 2019) (quoting *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003)). A federal employee may only pursue a Title VII claim in federal court if (1) he presented the same claim to his agency and (2) he filed his federal complaint within 90 days of the agency's denial of that claim.

Sandowski's religious discrimination claim is procedurally barred. Although it is difficult to discern from the Amended Complaint or other documents the precise actions that Sandowski contends constituted religious discrimination, he appears to be arguing that TSA discriminated against him by

denying his request for leave on Sunday morning to attend church. ECF No. 100, PageID # 881-83.  Similar allegations formed the basis of Sandowski's first DHS complaint.  ECF No. 90-21, PageID # 727.  Sandowski, however, did not file the present action until September 19, 2017, more than 90 days after receiving notice on March 7, 2009, that, on February 17, 2009, TSA had concluded that he had failed to substantiate his religious discrimination claims.  *See* ECF No. 90-23, PageID # 745.  As a result, any present religious discrimination claims arising out of that administrative complaint are untimely.  42 U.S.C. § 2000e-16(c).

Nor can Sandowski's second administrative complaint serve as the basis for his present religious discrimination claims.  His second complaint included claims that (1) he was not compensated for overtime worked on July 14, 2006, and (2) he was wrongfully terminated.  ECF No. 90-25, PageID # 757.  Neither claim is related to any religious discrimination claim.

Sandowski attempts to connect his request to attend church to his termination by asserting that his request for a religious accommodation began a sequence of events that culminated with his termination.  ECF No. 100, PageID # 881-82. He does not argue, however, that he was fired *because he was Catholic*, and nothing in the record supports such a claim.  Thus, this court construes his challenge to his termination as a retaliation claim.  That claim was discussed in detail above.

The rule that a district court may consider claims that are "reasonably related" to the claims in an administrative employment discrimination complaint does not help Sandowski. *See Greenlaw v. Garrett*, 59 F.3d 994, 1000 (9th Cir. 1995). "In determining whether a new claim is like or reasonably related to allegations contained in the previous charge, the court inquires into whether the original [agency] investigation would have encompassed the additional charges." *Shelley v. Geren*, 666 F.3d 599, 606 (9th Cir. 2012) (quotation marks omitted) (applying same rule to ADEA claim). As a result of Sandowski's first complaint, TSA had *already* investigated Sandowski's claims that TSA had discriminated against him by failing to allow him to take Sundays off, and nothing in the record suggests that the two investigations overlapped or that the second administrative investigation addressed religious discrimination. As a result, Sandowski's second agency complaint cannot serve as the basis of his religious discrimination claims.[18]

---

[18]    In ruling on DHS's motion to dismiss Sandowski's first complaint, this court held that Sandowski's claims (which have since been dismissed) for perjury, obstruction of justice, physical assault, and abuse of authority were reasonably related to Sandowski's second administrative complaint. ECF No. 54, PageID # 327-29. Those claims all were based on the events immediately preceding Sandowski's termination. *See* ECF No. 54, PageID # 329. In contrast, his religious discrimination claim is based on events that occurred several months earlier and were the subject of his first administrative complaint.

Sandowski's religious discrimination claims were the subject of only his first agency complaint, and any claims relating to that complaint are untimely. Accordingly, this court grants summary judgment to DHS on Sandowski's Fourth Cause of Action.

This court notes, however, that evidence of the alleged religious discrimination may still be admissible at trial if the evidence is relevant to a timely claim (such as retaliation). Nothing in this order prevents Sandowski from offering such evidence if it is indeed relevant. This court holds only that Sandowski cannot pursue a separate claim based on religious discrimination.

## V. CONCLUSION.

Sandowski's Fifth Cause of Action is dismissed for lack of jurisdiction.

Defendant's motion for summary judgment on Sandowski's Second and Fourth Causes of Action is granted, but the motion for summary judgment on Sandowski's Third Cause of Action is denied. The Third Cause of Action (retaliation) remains for further adjudication.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 6, 2019



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Sandowski v. McAleenan*, Civ. No. 17-00469 SOM-WRP; ORDER (1) DISMISSING PLAINTIFF'S FIFTH CAUSE OF ACTION; (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S SECOND AND FOURTH CAUSES OF ACTION; AND (3) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S THIRD CAUSE OF ACTION